[Sac. No. 4523. In Bank.—December 29, 1931.]

GEORGE A. BARCELOUX et al., Appellants, v. H. J. BARCELOUX et al., Respondents.

W. T. Belieu, Huston, Huston & Huston and M. H. Iversen for Appellants.

George R. Freeman, Marshall Nuckolls and Herbert V. Keeling for Respondents.

PRESTON, J.—Appeal from judgment for defendants in an action to cancel and annul a deed to real property upon the ground that there was no valid delivery of the deed to the grantee and that the delivery, if any, was obtained through constructive fraud.

Plaintiff George A. Barceloux and defendant H. J. Barceloux, hereinafter referred to as George and H. J., are brothers; for many years they engaged in joint enterprises and held joint properties, some of which stood at times in the name of one of them for the benefit of both. Their relationship was always one of the very highest confidence.

For several years they had been the joint owners of a large ranch upon which a $32,500 mortgage became due in the fall of 1922. H. J. also owed George some $9,000 to $12,000, representing debts which originated with the purchase of said ranch, stock and attendant transactions. The property was not paying and H. J. desired to be relieved of his portion of all said indebtedness. To this end he conveyed the property to George by a deed executed February 5, acknowledged at Willows February 6 and recorded February 7, 1923. George thereafter secured a release of said mortgage and refinanced the property by giving a new $30,000 bank mortgage. Said conveyance by H. J. to George

was absolute and gave George title to the entire property in his own right.

But on the same day, February 5th, George also executed to H. J. a deed conveying back to him an undivided one-half interest in said ranch, acknowledged it on February 6th at Orland and handed it to the grantee. It was recorded May 26, 1924, under circumstances to be hereinafter related. This is the deed which plaintiffs here seek to have set aside. The question is whether George handed it to H. J. with the intention of delivering it and thereby conveying back said undivided half interest to H. J., or whether he handed the deed to H. J. merely to be held in escrow with the intention and under the belief that there could be no valid delivery and hence no conveyance of title without recordation. The trial court found for defendants and plaintiffs appealed.

Appellants claim that the facts surrounding the delivery of the deed are undisputed and under the rules of law properly applicable thereto, a failure of valid delivery is shown. Respondents urge that the facts are not undisputed but that the case is one wherein the decision of the trial court, rendered upon conflicting evidence, must be affirmed. In this we agree. While the bare facts are undisputed, the further and determinative evidence bearing upon the intent of the parties, their acts and statements, is conflicting, and the trial court was warranted in resolving this conflict in favor of defendants. A brief discussion of such evidence follows:

H. J., who defaulted and upon the trial testified for his brother, stated in substance that after deeding the property to George, they discussed the fact that the land contained mineral deposits which might or might not enhance greatly its value; that H. J. told George that he felt he should be in a position to realize upon this development and asked for an opportunity to repurchase his share of the ranch upon payment to George of whatever sums were due him; that to further this understanding George then executed said deed, which H. J. agreed he would not record unless and until he paid his indebtedness to George. H. J. was at the time president of a local bank and he testified that he placed the deed in the bank vault, taking it not as grantee but in es-

crow to be held until the payment of said indebtedness. Prior to this time, in July, 1921, defendant Freeman's predecessor had obtained a judgment of $47,260.31 against H. J. and one Donohoe, affirmed on appeal February 24, 1924. Donohoe was almost immediately adjudged a voluntary bankrupt and H. J., in consideration of Freeman withholding execution against his property, agreed that he would make no transfers thereof. Freeman, however, knowing of said unrecorded deed, requested its recordation, which request H. J. complied with on said May 26, 1924. Mr. Freeman testified that H. J. made no mention of the alleged escrow of his unpaid debt to George or of George's alleged ownership of the land. Furthermore, nothing having been paid upon the judgment, H. J. shortly thereafter, at Freeman's request, gave him as further security a trust deed upon the said property, which was placed of record July 3, 1926. During this same year George testified, he learned for the first time of the recordation of said deed and soon thereafter, in November, 1926, he instituted this action as aforesaid.

The trial court found that George handed said deed to H. J. with intent to reconvey to the latter an undivided half interest in and to said property, without conditions or reservations of any nature; that George retained no control over the deed and there was no intent or agreement that it should be held or returned to him at any special time or upon any condition; that on the contrary it was intended to and did effect an immediate transfer to H. J., and that it was executed for a good consideration without intent to defraud. Upon these findings the trial court denied plaintiffs relief and the default of H. J. having been duly entered, gave judgment to defendant Freeman for his costs. At the same time the trial court filed a memorandum opinion setting forth the views embodied in the findings and holding that said unconditional delivery of the deed by George to H. J., without reservation or power of recall, conveyed full title to H. J., thus making applicable the provisions of section 1056 of the Civil Code as follows: "A grant cannot be delivered to the grantee conditionally. Delivery to him . . . is necessarily absolute, and the instrument takes effect thereupon, discharged of any condition on which the delivery was made."

■ With the findings and opinion of the court below we find ourselves in full accord. There can be no question of the sufficiency of the evidence to support them. Appellants base their main contention upon the case of *Hotaling* v. *Hotaling*, 193 Cal. 381 [56 A. L. R. 734, 224 Pac. 455], urging that the intent of grantor and grantee, as testified to by them, must control, making the alleged delivery invalid as there was no intent to pass title. In this cause, however, there is nothing to indicate that either of the brothers believed that a deed was ineffective until recorded; they were both men of wide business experience, bank officials, and presumably understood the effect of executing and handing over to a grantee such a conveyance. No writings relative to the transaction passed between them; no definite amount was fixed as due from H. J. to George at any definite time, upon payment of which the deed was to take effect or upon nonpayment to be canceled. Despite the alleged intent to have ownership remain in George, the ranch was operated after the exchange of deeds in the same manner as before, that is, George continued to operate the ranch, keep the books, make annual statements to H. J., and H. J. continued on various occasions to contribute his share toward costs and assessments, acting in all respects as when he was admittedly a joint owner. The trial court did not have to credit the testimony of the brothers as to their intent, especially when it was in direct conflict with the intent plainly indicated by their own actions. Mr. Freeman testified that H. J., during their negotiations over a long period, never protested his lack of ownership or right to record the deed or give the trust deed upon said property. His testimony and other evidence credited by the trial court offered ample support for its conclusion.

■ The claim of constructive fraud is untenable under the above findings and under the testimony of the brothers themselves as to their complete understanding with each other. H. J. himself testified that he took the deed without fraudulent intent and with every intention of not recording it.

■ Lastly, appellant pleads that to uphold the judgment is to permit H. J. and his successor in interest Freeman to secure title to said ranch after appellant has fully kept all the terms of his agreement and assumed a personal lia-

bility in excess of $30,000, besides operating the ranch at his own expense for many years, H. J. having been adjudged a bankrupt. Such a result would be unfortunate. The record, however, shows that many involved transactions and confidential dealings took place between these brothers over a long period, which suggests that as between them a proper adjustment of the equities may some time be had; at any rate, the result is no more inequitable than it would be to penalize the defendant Freeman for his aid in delaying execution upon the properties of his said judgment debtor.

The judgment is affirmed.

Seawell, J., Shenk, J., Curtis, J., Langdon, J., Richards, J., and Waste, C. J., concurred.